Richard S. MELROSE, individually and as General Partner of Phone Bat–Tery, Ltd., an Illinois limited partnership, Plaintiffs–Appellees,

v.

SHEARSON/AMERICAN EXPRESS, INC., a Delaware corporation, A. Loretta Asta and Edward S. Elba, Defendants.

Appeal of WILLKIE, FARR & GALLAGHER.

Nos. 88–2008, 88–2260.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1988.

Decided Feb. 8, 1990 *.

Rehearing and Rehearing En Banc Denied June 6, 1990.

---

* This amended opinion is issued in light of the recent Supreme Court decision *Pavelic & Le-* *Flore v. Marvel Entertainment Group,* —— U.S. ——, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

David J. Magee, Anne E. Levinson, Vincent D. Pinelli, Cornelius F. Riordan (argued), John H. Wickert, Burke & Smith, Chicago, Ill., for plaintiffs-appellees.

David M. Stahl, Sidley & Austin, Chicago, Ill., Richard C. Leng, Barrington, Ill., Philippe M. Salomon (argued), William J. Borner, Barry J. Friedberg, Barbara A. Hink, New York City, for defendants and appellant.

Before POSNER, Circuit Judge, and GRANT, Senior District Judge.[**]

GRANT, Senior District Judge.

Appellant, the law firm of Willkie, Farr & Gallagher, represented the defendant, Shearson Lehman Hutton, Inc., formerly Shearson Lehman Brothers, Inc. and Shearson/American Express Inc., at the trial level. The firm challenges the imposition of sanctions by the district court in accordance with Fed.R.Civ.P. 11 for filing what the court referred to as a "baseless" motion for summary judgment. 120 F.R.D. 668.

## I. FACTS

This suit arises out of Richard Melrose's efforts to obtain the purchase price and working capital for an ongoing, though unprofitable, business known as 800 Bat-Tery. To assist him in his efforts, Melrose contacted A. Loretta Asta, the wife of a fellow employee, and an employee of Shearson Lehman/American Express. As a cash manager in the Corporate Services Group of Shearson's Investment Banking Division, holding the title of "Vice President Investments," and as a registered representative on the New York Stock Exchange, Asta had direct access to clients' accounts, and the ability to withdraw funds from those accounts without prior approval from a supervisor, subject only to the clients' instructions. When Asta was first approached by Melrose in January 1982, she informed him that the proposed investment was too small to be of interest to Shearson clients.

In May 1982, Melrose hired the law firm of Gottlieb & Schwartz to oversee a private placement offering for a limited partnership which would acquire and operate 800 Bat-Tery, and to prepare the necessary documents for the offering. The partnership was to be known as Phone Bat-Tery, Ltd. ("PBL"). The private offering, however, failed to attract any investors, and in May 1982 Melrose once again sought

[**] The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation. Following oral argument in this case, the Honorable Richard D. Cudahy disqualified himself as a member of the panel.

Asta's assistance. Despite her earlier representation that the investment was too small to be of interest to any of Shearson's clients, Asta suggested that she present Melrose's proposal to a man named Irving Mazer, a Shearson client. Asta, however, neither requested nor received a fee or commission for her services, and there was no indication that Shearson was aware of her business dealing with Melrose until the latter part of 1982.

In July 1982, Asta advised Melrose that Mazer wished to invest $1 million in PBL. Contrary to her representation, however, Mazer had not authorized the transaction.

On August 7, 1982, Melrose presented Asta with subscription materials for Mazer's signature. Acting as Mazer's representative, Asta completed a purchaser's representative questionnaire in which she identified Mazer as her "personal client" rather than a client of Shearson Lehman Hutton.

On August 11, 1982, Asta wire transferred $1 million from Mazer's account at Shearson to PBL's subscription account at the American National Bank of Chicago. The instructions which accompanied the wire transfer, however, identified Irving Mazer as the account holder and directed the Bank to credit the funds to him. Bank officers contacted Herbert Stern, Jr., an attorney at Gottlieb & Schwartz, concerning the discrepancy in the wire transfer instructions, and were advised that Mazer was a PBL investor and that no conflict existed. Apparently satisfied with this explanation, the Bank accepted the transfer and deposited the funds into PBL's account. Melrose thereafter transferred $500,000 from PBL's subscription account to its partnership account; and, on August 12, 1982, used approximately $380,000 of the money in the partnership account to purchase the assets of 800 Bat–Tery.

Melrose claims that in late August 1982, Asta informed him that Mazer had decided to invest only $500,000, and that it would not be necessary to refund the balance of Mazer's initial investment because she had personally reimbursed his account at Shearson. While Melrose retained possession of the $500,000 remaining in the PBL subscription account, Asta claimed to be the beneficial owner of those funds.

In mid-September 1982, Melrose received subscription documents purportedly executed by Mazer. Norman Shapiro, one of Melrose's attorneys at Gottlieb & Schwartz, advised Melrose that the signature on the documents appeared to have been photocopied from another document, and was not original. Both Melrose and his attorneys thereafter made limited and unsuccessful efforts to contact Mazer and to obtain originally executed subscription agreements from him. They also sought and received a written statement from Asta verifying her representation that the original documents had merely been lost in the mails and that she would secure another set from Mazer upon his return from a trip abroad. No further efforts to contact Mazer appear to have been made, however, after September 1982; and originally executed subscription documents were never obtained.

At some point in September, Melrose advised his attorneys at Gottlieb & Schwartz that Mazer had decided to invest only $500,000 of the $1 million which was transferred from his account at Shearson. Contrary to their advice, Melrose retained the remaining $500,000 and transferred the funds from the PBL subscription account into its partnership account.

Having purportedly advised Melrose that she wished to make a personal investment in PBL, Asta tendered a blank, undated check to Melrose's wife as payment for her subscription. On September 17, 1982, Asta met with Melrose and executed PBL subscription documents in her name. Melrose claimed that Asta told him to transfer the $500,000 from the PBL subscription account in which she claimed a beneficial interest to her personal checking account to cover the check which she had tendered earlier. Melrose declined, claiming that the transaction was unnecessarily circular, but retained the check. On October 15, 1982, Melrose executed and filed a "Report of Sale" as required by the Illinois Securities Law, reflecting the sale on September 30,

1982 of a $500,000 limited partnership interest in PBL to Asta.

Asta subsequently told Melrose that she had located another potential investor, Edward S. Elba; and in October 1982, Melrose received subscription documents purportedly executed by Elba and evidencing a $500,000 investment. Elba was not a Shearson client, although there is some question as to whether Melrose was aware of that fact at the time.

On November 10, 1982, Asta wire transferred $500,000 to the PBL subscription account at American National Bank as payment for Elba's subscription. The funds, however, were not Elba's but belonged to another Shearson client, the Burger King Limited Partnership I. Once again the instructions accompanying the wire transfer contained incorrect information which identified Burger King, rather than PBL, as the account holder and beneficiary of the funds. Although the Bank advised Melrose of the discrepancy in the instructions, it accepted the transfer and deposited the funds into PBL's subscription account. Melrose thereafter executed Elba's subscription agreement and filed a Report of Sale reflecting the sale of a $500,000 limited partnership interest in PBL to Elba.

The documents executed by Elba were apparently lacking relevant information. Accordingly, in mid-November, one of Melrose's attorneys met with Asta and a man who identified himself as Elba to obtain completed documents and to have Elba re-execute his subscription materials.

At the end of November 1982, Asta informed Melrose that the money transferred on November 10, 1982 in payment of Elba's subscription had been withdrawn from Burger King's account at Shearson by mistake, and that it would be necessary for him to return the $500,000. Melrose agreed, and returned the funds by wire transfer on November 30, 1982.

Following an internal investigation which concluded that Asta had engaged in improper acts, including, but not limited to, her conduct with Melrose, Shearson terminated Asta's employment and sent a formal demand to Melrose requesting the return of the $1 million which had been misappropriated from Mazer's account. Melrose refused to return the money, and initiated the present action against Shearson, Asta and Elba.

Following Shearson's demand for payment, Melrose attempted to deposit the check which Asta had tendered in September. The check, however, was returned for insufficient funds.

Melrose's attempts to collect Elba's subscription payment were also unsuccessful. During a telephone conversation, Elba advised Melrose that he was unable to fulfill his subscription due to business failures.

## II. PRIOR PROCEEDINGS

Plaintiffs, Richard S. Melrose and Phone Bat–Tery, Ltd., filed an eleven count amended complaint against Shearson, Asta and Elba seeking to recover both compensatory and punitive damages for financial losses suffered as a result of allegedly improper conduct on the part of Asta and Elba. On Shearson's motion, the district court, then Judge Decker, dismissed four of the eleven counts of the amended complaint. The remaining seven counts alleged that: Asta was the common law agent of Shearson, and Shearson was therefore liable for her fraudulent acts (Count IV); Shearson was both negligent and grossly negligent in its alleged duty to the plaintiffs in failing to supervise Asta's activities (Counts V and VI); Shearson breached its fiduciary duty to the plaintiffs (Count VII); Asta's principal, Shearson, violated the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, para. 261 et seq. (Count VIII); Shearson intentionally interfered with the plaintiffs' business relationships and expectations (Count IX); and, Shearson intentionally induced Elba to breach his subscription agreement with PBL (Count X).

Shearson filed eight counterclaims against Melrose and Phone Bat–Tery, Ltd. which were premised on a theory that Melrose had conspired with Asta to fraudulently obtain money from Shearson and its clients. It ultimately sought summary

judgment with respect to only six of those counterclaims, the allegations of which are summarized as follows: the plaintiffs' conduct in gaining access to Shearson's funds constituted negligence, gross negligence and fraud; the diversion and retention of funds from Mazer's account constituted conversion under Illinois law; and, the plaintiffs violated the Securities Act of 1933, 15 U.S.C. §§ 77e and 77l (1982), and the Illinois Consumer Fraud and Deceptive Business Practices Act, by offering for sale and selling securities as to which no exemption applied, when a registration statement was not in effect, and no proper notice of sale had been filed with the Illinois Securities Commission.

The plaintiffs moved for summary judgment with respect to the defendants' federal securities law claims (Counterclaim 6), contending that the transactions in question were exempt because they were sold to "accredited investors." Judge Decker, however, concluded that a genuine issue of fact existed as to whether Melrose reasonably believed that Mazer, Asta and Elba were "accredited investors," and accordingly denied the motion.

On June 12, 1987, Shearson filed its motion for summary judgment seeking dismissal of the seven remaining counts of the Amended Complaint and judgment in its favor on the six counterclaims identified above. Shearson sought and was given leave by Judge Decker to file a brief in excess of the local 15 page limit. The case was subsequently transferred to Judge Will, to whom Shearson presented 1540 pages of argument and supporting documentation. The plaintiffs' response was equally oppressive, with their brief and appendices totalling 433 pages.

On February 4, 1988, the district court entered a Memorandum Opinion granting Shearson's motion as to the breach of fiduciary duty claim (Count VII), but concluding that genuine issues of material fact existed with respect to Counts IV, V, VI, VIII, IX and X of the Amended Complaint and as to all but one of the defendants' counterclaims. The court on its own motion dismissed Shearson's conversion claim (Counterclaim 5), finding no support under Illinois law for that claim.

The district court concluded that, with the exception of Count VII, Shearson's motion, and the arguments raised in support thereof, were "baseless." Judge Will specifically noted that:

> Shearson's counsels' conduct was unreasonable in that it was both frivolous and improper. A reasonable inquiry was not made into the facts or law of this case and other controlling and companion cases, and Shearson's motion substantially delayed the progress of this case, harassed the plaintiffs and increased the costs to the plaintiffs, the court and the judicial system.

(Amended Memorandum Opinion dated June 2, 1988, Appellant's Appendix at p. 66.)

Having concluded that the imposition of sanctions against Shearson's counsel was appropriate under Fed.R.Civ.P. 11, the court invited plaintiffs' counsel to file a statement of the hours and fees involved in responding to Shearson's motion.

On February 19, 1988, Shearson filed a motion asking the district court to reconsider that portion of its February 4 order relating to the imposition of Rule 11 sanctions. On February 25, 1988, plaintiffs' counsel filed a petition for sanctions against Shearson. The petition was supported by the affidavits of Cornelius F. Riordan, in which Mr. Riordan attested that five attorneys, including himself, and an undisclosed number of paralegals expended more than 605 hours preparing the plaintiffs' response to Shearson's motion for summary judgment, and that his firm reasonably incurred $85,947.50 in attorneys' fees and $894.65 in other related expenses. Mr. Riordan stated in the plaintiffs' petition that an award in the amount of $86,842.15 would constitute "a reasonable and appropriate sanction in light of the severe and outrageous Rule 11 violation on the part of Shearson and in light of the fact that a sanction in any lesser amount would not serve to deter further violations of Rule 11 since Shearson is a corporation of considerable wealth."

In an amended memorandum opinion dated June 2, 1988, the district court denied the motion to reconsider, reiterating the basis of its decision to impose sanctions against Shearson's counsel, and awarded plaintiffs' counsel $37,212.15 of the $86,842.15 requested.

The district court found not one but several reasons for imposing Rule 11 sanctions against Shearson's counsel. Those reasons were delineated in both the court's order of February 4, 1988 and its amended order of June 2, 1988. (1) The length of Shearson's brief and appendices was overwhelming and inappropriate. (2) Shearson's counsel failed to file a separate statement of uncontested facts in accordance with Local Rule 12(a) which "made it unreasonably difficult for the court and the plaintiffs to respond." (3) Shearson's counsel made specious and frivolous arguments with respect to damages, the applicability of the doctrine of *in pari delicto* and estoppel defenses as a matter of law. (4) Shearson's counsel sought summary judgment on the conversion claim (Counterclaim 5) based upon state law when they knew or should have known that Melrose could not be held liable for the conversion of Shearson's funds under Illinois law, and then proceeded to argue for the first time in their reply brief that the transaction in question was governed by federal law. (5) Shearson's counsel failed to acknowledge that Judge Decker had previously denied the plaintiffs' motion for summary judgment on Counterclaim 6 on the ground that there were disputed material facts, or to demonstrate that there were any facts which occurred subsequent to Judge Decker's previous ruling which would warrant a re-examination of the issue.

## III. STANDARD OF REVIEW

Fed.R.Civ.P. 11 provides that the signature of an attorney or party on any motion or other paper filed in a district court

> constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

A violation of any one of these provisions mandates the imposition of sanctions.

At the time this appeal was heard, the standard for reviewing decisions under Rule 11 was unsettled in this circuit. Compare *R.K. Harp Investment Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir. 1987), *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir.1987), and *Borowski v. DePuy, Inc., a Division of Boehringer Mannheim Co.*, 850 F.2d 297, 304 (7th Cir.1988), employing an abuse of discretion standard, with *Brown v. Federation of State Medical Boards of the United States*, 830 F.2d 1429, 1434 (7th Cir.1987), *Beeman v. Fiester*, 852 F.2d 206, 209 (7th Cir.1988), and *Magnus Electronics, Inc. v. Masco Corp. of Indiana*, 871 F.2d 626, 629–30 (7th Cir.), *cert. denied, Brainerd v. Masco Corp. of Indiana*, — U.S. —, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989), recognizing a *de novo* or "multi-tier" approach to review. We have since unequivocally adopted a deferential standard in reviewing a district court's decision to impose sanctions under Rule 11. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 933 (7th Cir.1989) (*en banc*). As we noted in *Mars Steel Corp.*,

> because the trial court alone has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reviewable only where there has been an abuse of discretion.

880 F.2d at 933, *quoting R.K. Harp Investment Corp.*, 825 F.2d at 1103.

## IV. CONCLUSIONS

Shearson's counsel premise their arguments on appeal on an erroneous belief that a party cannot be sanctioned under

Rule 11 as long as it can show that it had a reasonable expectation of prevailing on *some* of the arguments made in its summary judgment motion. Counsel point out that they were successful in eliminating the plaintiffs' breach of fiduciary duty claim (Count VII), and contend that, had they prevailed on the issue of apparent authority, their motion could not have been deemed "baseless." They further assert that it was improper for the district court to consider the length of the motion and memoranda in support thereof or a technical violation of Local Rule 12(e) in determining whether sanctions were appropriate. Shearson's counsel justify their failure to acknowledge Judge Decker's previous ruling with respect to Counterclaim 6 by arguing that the decision was no longer controlling given "vastly changed circumstances" which existed after discovery was complete. They, however, do not identify the nature of those "circumstances."

In an attempt to persuade us that the summary judgment motion was indeed meritorious, Willkie, Farr & Gallagher has supplemented the appellate record with a copy of the final judgment that was entered in this cause on January 26, 1989. The judgment reflects that the plaintiffs withdrew with prejudice Counts IX and X of their amended complaint and that the district court granted Shearson's motion for directed verdicts on Counts IV, V, VI and VII of the amended complaint. Counsel believe that the plaintiffs' withdrawal of the two counts and the directed verdicts in their favor constitute compelling evidence in support of their position that there was a reasonable basis for seeking summary judgment on those claims. They, however, have chosen not to comment on the fact that the final judgment also shows that they withdrew with prejudice Counterclaims 6, 7 and 8 and that the court granted the *plaintiffs'* motion for directed verdicts on Counterclaims 1, 3 and 4.

### A.

■ Contrary to appellant's belief, the final disposition of this case does not compel a finding that their conduct in filing the summary judgment motion and supporting memoranda could not have been deemed to be a violation of Rule 11. Shearson's counsel are reminded that "Rule 11 fees may be awarded even *against* a prevailing party," *Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir.1987), *cert. dismissed,* 485 U.S. 901, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988). *See also Mars Steel Corp.,* 880 F.2d at 932 ("Rule 11 focuses on inputs rather than outputs, conduct rather than result"). The violation, if any, was complete when the motion and supporting memoranda were filed. *Szabo Food Service,* 823 F.2d at 1077. We would also note that Shearson prevailed only in part, although it sought summary judgment on each and every claim, counterclaim and defense raised.

■ It is true that in the past we have generally focused attention on the motion or pleading as a whole, rather than on its parts, in determining whether Rule 11 sanctions were appropriate, *see, e.g., Hill v. Norfolk and Western Railway Co.,* 814 F.2d 1192, 1200 (7th Cir.1987); *Indianapolis Colts v. Mayor and City of Baltimore,* 775 F.2d 177, 181 (7th Cir.1985); *Miller Brewing Co. v. Brewery Workers Local Union No. 9, AFL–CIO,* 739 F.2d 1159, 1168 (7th Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 912, 83 L.Ed.2d 926 (1985). We have also expressed some doubt as to whether a point-by-point analysis of a pleading or motion under Rule 11 would be worthwhile in every case. *See Miller Brewing Co.,* 739 F.2d at 1168. It, however, is neither contrary to the language of Rule 11 as amended, nor an abuse of discretion for the district court to undertake such a detailed analysis when the court believes the circumstances warrant it. A litigant cannot expect to avoid all sanctions under Rule 11 merely because the pleading or motion under scrutiny was not *entirely* frivolous. *See Hill v. Norfolk and Western Railway Co.,* 814 F.2d at 1200.

While we are inclined to agree with Shearson that some of the arguments raised in support of its summary judgment motion may have been meritorious or at

least colorable,[1] we concur with the district court in finding that Shearson's motion and memoranda were predominated by arguments which were unsupported either by the facts as they existed at the time or by governing legal principles. We cite, as examples, counsel's arguments in support of summary judgment on their own counterclaims (which are, for the most part, based on the factually unsupported allegation that Melrose and Asta conspired together to defraud Shearson and its clients); Shearson's attempt to relitigate its conversion claim (Counterclaim 5), and the inconsistent legal arguments made with respect thereto; and, Shearson's arguments with respect to the absence of damages, and the applicability of the *in pari delicto* and estoppel defenses as a matter of law. Indeed, Shearson's counsel make no attempt to defend these arguments on appeal. They assume, incorrectly, that, had they prevailed on but one of the issues raised in their summary judgment motion, that of apparent authority, their motion could not have been deemed "baseless" and subject to sanctions.

While the motion may not have been entirely frivolous, a substantial part of it was based on arguments which were neither "well-grounded in fact" nor "warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." Such conduct in and of itself is violative of Rule 11, and provides a sufficient basis for the district court's decision to impose sanctions.

■ Although Willkie, Farr & Gallagher has not challenged on appeal the amount of the sanction which was ultimately imposed, we feel compelled to comment on the issue. In response to the court's order of February 4, 1988, plaintiffs' counsel filed a petition for sanctions seeking $86,842.15 in attorneys' fees and expenses, an amount which counsel believed would constitute "a reasonable and appropriate sanction in light of the severe and outrageous Rule 11 violation on the part of Shearson...." Mr. Cornelius Riordan, who filed the petition and supporting affidavit on behalf of the plaintiffs, attested that it took five attorneys, including himself, and an undisclosed number of paralegals more than 600 hours to respond to a summary judgment motion which they claimed was predominantly frivolous. Shearson's counsel objected to the amount as "unreasonable," but chose not to pursue the issue vehemently, perhaps fearing that it would only further alienate the court. The court agreed that some of the time claimed by the plaintiffs was not reasonably chargeable to Shearson, and cut the award by almost $50,000.

To suggest that it is "unreasonable" to claim that it took five attorneys more than 600 hours at a cost of $86,842.15 to respond to the type of arguments raised in the defendants' summary judgment motion is an understatement. It is absurd, and indeed sanctionable in its own right. *See In re Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987); *Szabo Food Service*, 823 F.2d at 1075, 1084–85.

"A party defending against a frivolous paper has a duty under Rule 11 to mitigate its legal fees and expenses by resolving frivolous issues quickly and efficiently." *Dubisky v. Owens*, 849 F.2d 1034, 1037 (7th Cir.1988). Such an obligation is implicit in Rule 11, and requires the defending party to "correlat[e] his response, in terms of hours and funds expended, to the merit of the claims." *Dubisky*, 849 F.2d at 1037 (quoting *INVST Financial Group, Inc. v. Chem–Nuclear Systems, Inc.*, 815 F.2d

---

**1.** It was not unreasonable, in our opinion, for Shearson to argue that Melrose had a legal duty to make further inquiry into Asta's authority, given the irregularities in his transactions with her, or that Melrose's reliance on Asta's "apparent authority" was unreasonable as a matter of law, given his failure to inquire. *See Malcak v. Westchester Park District*, 754 F.2d 239, 245 (7th Cir.1985); *Kamen & Co. v. Paul H. Aschkar & Co.*, 382 F.2d 689, 695–96 (9th Cir.1967), *cert. dismissed*, 393 U.S. 801, 89 S.Ct. 40, 21 L.Ed.2d 85 (1968); Restatement (Second) of Agency, Sec. 166, comment a, p. 393 (1958). Neither was it unreasonable for Shearson to seek summary judgment with respect to Count X, in which the plaintiffs allege that Shearson tortiously interfered with the Elba contract, given the plaintiffs' inability to establish any conduct, tortious or otherwise, on the part of Shearson or Asta which caused Elba to breach his contract with Phone Bat–Tery Ltd.

391, 404 (6th Cir.)), *cert. denied, Garratt v. INVST Financial Group, Inc.*, 484 U.S. 927, 108 S.Ct. 291, 98 L.Ed.2d 251 (1987). Plaintiffs' petition for sanctions is, in our opinion, clearly excessive, demonstrating no attempt whatsoever on the part of plaintiffs' counsel to mitigate their injury.

Unfortunately, Shearson did not seek, nor did the court on its own initiative impose, Rule 11 sanctions against the plaintiffs relating to their petition for sanctions. We have neither the authority to impose such sanctions on appeal nor the inclination to give that which has not been requested. Willkie, Farr & Gallagher has not challenged the amount of the sanction ultimately imposed by the district court; and, while the final award may indeed appear a bit excessive, it does not constitute an abuse of discretion.

### B.

There remains but one issue: whether Rule 11, which requires the signature of an *individual,* authorizes the imposition of sanctions against anyone other than that individual? [2] The parties have assumed for purposes of this appeal that the district court's order with respect to sanctions was directed to Willkie, Farr & Gallagher, Shearson's counsel of record. At the time this appeal was heard that assumption may have been reasonable. The Supreme Court, however, has recently held that Rule 11 sanctions may be imposed, not against a law firm generally, but only against the party and/or the *individual* who signed the pleading or paper in question. *Pavelic & LeFlore v. Marvel Equipment Group*, —— U.S. ——, 110 S.Ct. 456, 458–59, 107 L.Ed.2d 438 (1989). This is true even when the individual explicitly signs *on behalf of* the firm. *Id.* 110 S.Ct. at 459–60.

The district court in the present case awarded sanctions against "Shearson's counsel", without specifying to whom it was referring. The record shows that while Willkie, Farr & Gallagher, a New York based firm, may have been chief counsel for Shearson, Isham, Lincoln & Beale, a Chicago firm, served as co-counsel. It was a member of the Isham firm, David Stahl, who signed the motion for summary judgment. The sanctions order could as easily apply to Mr. Stahl as it could to Mr. Philippe Salomon, the member of the Willkie firm who apparently authored and signed the memorandum and reply in support of the summary judgment motion. While both Mr. Stahl and Mr. Salomon signed on behalf of their respective firms, the decision in *Pavelic & LeFlore* makes it clear that it is the individual who signs a pleading or paper in violation of Rule 11 that is subject to sanctions, and not the firm which he or she represents. We are unable, however, to discern from the record as it has been presented whether the district court intended to impose sanctions only against Willkie, Farr & Gallagher, as the parties suggest, or whether its reference to "Shearson's counsel" was directed to Mr. Stahl and/or Mr. Salomon.

Accordingly, we now REVERSE the decision of the district court insofar as it imposed Rule 11 sanctions against Willkie, Farr & Gallagher and REMAND for further proceedings consistent with this order.

---

2. Fed.R.Civ.P. 11 provides in pertinent part:
   Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record *in the attorney's individual name....* If a pleading, motion, or other paper is signed in viola-
tion of this rule, the court, upon motion or upon its own initiative, shall impose upon the *person who signed it,* a represented party or both, an appropriate sanction.... (Emphasis added).