Edward **PRITCHARD**, Plaintiff–
Appellant, Cross–Appellee,

v.

**RAINFAIR, INC.**, Defendant–Appellee,
Cross–Appellant.

**Nos. 90–1431 and 90–1782.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 11, 1991.

Decided Oct. 2, 1991.

---

Robert Sutton (argued), Sutton & Kelly, Milwaukee, Wis., for plaintiff-appellant, cross-appellee.

David Lucey, Jon P. Christiansen, Lisa S. Neubauer (argued), Foley & Lardner, Milwaukee, Wis., for defendant-appellee, cross-appellant.

Before CUMMINGS and FLAUM, Circuit Judges, and GRANT, Senior District Judge.*

GRANT, Senior District Judge.

Plaintiff, Edward Pritchard, filed a one count complaint against his former employer, defendant Rainfair, Inc. alleging that he had been denied pension benefits in violation of ERISA, specifically 29 U.S.C. § 1140. He subsequently amended his complaint to include among those benefits post-retirement medical insurance. The district court granted Rainfair's motions for summary judgment, but denied its request for attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1) and Fed.R.Civ.P. 11. This cross-appeal followed.

## I. FACTS

In 1956, Rainfair's Board of Directors approved a Discretionary Non–Contributory Retirement Plan (the "Discretionary Plan"), which applied to employees who retired at age 65 with a minimum continuous employment of 15 years. The pension plan established a benefit schedule based on salary with the maximum benefit available set at $225 per month. There were no employee contributions, and benefits were paid out of the general assets of the company. No separate fund was established, and there were no provisions for vesting. Indeed, the Discretionary Plan specifically provided that:

> This plan is entirely voluntary and discretionary on the part of the Company, shall impose no contractual obligation or liability whatsoever upon the Company, and no Employee shall have any contractual, vested or enforceable right(s) hereunder. All payment of retirement pay hereunder shall be contingent upon the Company's financial ability from time to time to make and/or continue such payments, as and whenever determined by its Board of Directors, whose decision shall be final.

> The Company expressly reserves the right at any time or times to increase, reduce, suspend, resume and/or discontinue any and all such payments of retirement pay and/or to modify, suspend or discontinue this entire retirement pay plan, as and whenever determined by its Board of Directors, whose decision shall be final.

In 1970, Rainfair was acquired by Koracorp Industries, Inc., and adopted the Koracorp Profit–Sharing Pension Plan (the "Profit–Sharing Plan") as *the* source of retirement benefits for its employees.[1] Although the Discretionary Plan could have been terminated as to all employees at that time, it was retained for the benefit of Rainfair's older employees who would be unable to accumulate any significant benefits under the new plan before they retired.[2]

In 1976 ERISA went into effect, and Rainfair adopted a formal policy effectively integrating its two pension plans. The policy established an offset mechanism for reconciling benefits available under the Profit–Sharing Plan with benefits payable under the Discretionary Plan. Pursuant to this new policy, an eligible employee would receive a lump sum distribution under the Profit–Sharing Plan first, and monthly benefits under the Discretionary Plan would be delayed until such time as, if ever, the employee "used up" the lump sum distribution. If the employee was to receive $225 per month under the Discretionary Plan, the lump sum Profit–Sharing distribution, which was deemed to appreciate according to generally accepted accounting principles, would be divided by $225 in order to determine the number of months before the employee would be eligible for payments under the old plan. In some cases, where the lump sum would appreciate at greater than $225 a month, the employee would never be eligible for payments under the Discretionary Plan.

---

* The Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, is sitting by designation.

1. The Profit–Sharing Plan provided for accrual of profit-sharing benefits annually which would then be paid as lump sum distributions to employees upon their retirement or other termination.

2. The Discretionary Plan was terminated as to all employees hired after December 31, 1969.

The integrated plan thus provided Rainfair's older employees (hired prior to January 1, 1970) with a retirement benefit equal to, or greater than, that which they would have received under the Discretionary Plan. All affected employees were notified of the policy change in a letter to "Fellow Employees" dated August 13, 1976.

Pritchard was employed by Rainfair from October 1, 1962 until July 28, 1967, and again from July 15, 1969 until his resignation on November 30, 1984. At the time of his resignation, Pritchard was only 61 years old. In March of 1985, Pritchard received a lump sum payment under the Profit–Sharing Plan of $50,133.28. Under the offset system described above, this distribution was deemed to be sufficiently large to allow Pritchard to invest the lump sum payment at an annual rate of return as low as five percent and still earn more in monthly interest income than the $225 he would otherwise have received under the old pension plan. Rainfair thus took the position that Pritchard was not, and would never be, eligible for payments under the Discretionary Plan.

Upon his resignation, Pritchard also received a letter from Rainfair which summarized the benefits he was to receive. This letter, among other things, advised Pritchard that Rainfair would pay for his health insurance through December 31, 1984, and that he would then have the option of continuing his health insurance under the group plan at his own expense. Pritchard elected to pursue this option and extended his coverage by paying the necessary premium.

In March of 1986, more than a year after Pritchard's resignation, Rainfair adopted a new policy of paying post-retirement health insurance premiums for a limited number of its salaried employees. The policy was not retroactive and extended only to the executive assistant to the president and to members of the "president's management staff."

On October 4, 1988, three days before his 65th birthday, Pritchard filed a complaint against Rainfair alleging that its refusal to pay the retirement benefit due under the Discretionary Plan violated ERISA, "particularly 29 U.S.C. § 1140." Rainfair moved for summary judgment under Fed.R.Civ.P. 56, and all briefing had been completed when Pritchard filed an amended complaint, modifying his ERISA claim to include a claim for post-retirement medical insurance. Rainfair supplemented its Rule 56 motion to address the new claim, and the district court granted both the original and supplemental motions. Rainfair thereafter sought its attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1) and Fed. R.Civ.P. 11. The district court denied the motion for fees by order dated March 23, 1990.

## II. DISCUSSION

### A. *The ERISA Claim*

In both his original and amended complaint, Pritchard alleges a violation of 29 U.S.C. § 1140, which prohibits discrimination against plan participants for exercising their rights under the provisions of an employee benefit plan.[3] Neither the facts which he pled, nor those which were presented in response to summary judgment, however, support a claim under that section. There is no evidence whatsoever that Pritchard was discharged, fined, suspended, expelled, disciplined, or discriminated against for exercising a right to which he was entitled under Rainfair's pension plan. The district court, accordingly

---

**3.** 29 U.S.C. § 1140 specifically provides:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 et seq.], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter or the Welfare and Pension Plans Disclosure Act....

and appropriately, entered judgment for Rainfair on the § 1140 claim. Pritchard does not contest that disposition.

The district court, however, went on to address the merits of a claim under 29 U.S.C. § 1053(a), ERISA's non-forfeiture provision, noting that it was this section on which the parties had focused in their briefs in support of, and opposition to, summary judgment. It concluded that, like the offsets approved in *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir.), *cert. denied*, 469 U.S. 917, 105 S.Ct. 294, 83 L.Ed.2d 229 (1984), and *Vintilla v. U.S. Steel Corp. Plan for Employee Pension Benefits*, 606 F.Supp. 640 (W.D.Pa.1985), *aff'd*, 782 F.2d 1026 (3d Cir.), *cert. denied*, 475 U.S. 1141, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986), Rainfair's offset plan did not violate the non-forfeiture provisions of § 1053(a), but was merely "an attempt to change the vehicle by which the company would deliver benefits, while maintaining fairness of treatment between older and younger employees."

On appeal, Pritchard makes no attempt to salvage his § 1140 claim. His arguments focus, as they did at the district court level, on 29 U.S.C. § 1053(a). Pritchard contends in a very cursory fashion that *Alessi, Holliday* and *Vintilla* are factually distinguishable, although he cites no contrary authority in support of his position that the offsets were improper. He further contends that a genuine issue of fact existed as to whether he had been promised the retirement and medical benefits to which he claims entitlement, and that the district court was thus precluded from entering summary judgment for Rainfair. We do not agree.

**(1)** *Integration of Multiple Pension Plans*

■ Section 1053(a) provides that an employee's right to his normal retirement benefit vests, and is nonforfeitable, "upon the attainment of normal retirement age." It provides, however, that an employee's right to accrued benefits derived from his or her own contributions to a plan must vest immediately; and that accrued benefits derived from employer contributions must vest according to one of the three minimum vesting schedules set forth in § 1053(a)(2). Under those schedules, an employee's right to an accrued benefit becomes vested to varying degrees upon completing specified years of service.[4] The vesting provisions, however, provide no guarantee of the amount of the benefits to be received, or the method of calculating those benefits, *Alessi*, 451 U.S. at 511–12, 101 S.Ct. at 1900; *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 372–73, 100 S.Ct. 1723, 1731–32, 64 L.Ed.2d 354 (1980). That function is a matter of contract generally left to the parties. *Alessi*, 451 U.S. at 511, 101 S.Ct. at 1900. Neither do they protect early retirement benefits. *McBarron v. S & T Industries*, 771 F.2d 94, 99 (6th Cir.1985); *Hoover v. Cumberland, Maryland Area Teamster Pension Fund*, 756 F.2d 977, 982 (3d Cir.), *cert. denied*, 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985); *Sutton v. Weirton Steel Division of National Steel Corp.*, 724 F.2d 406, 410 (4th Cir.1983), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984).

■ Although § 1053 can technically be read to prohibit any integration of other retirement benefits, it was not intended to have that effect. *Alessi*, 451 U.S. at 511–12, 518, 101 S.Ct. at 1900, 1903–04. Indeed, Congress expressly provided that pension benefits may be integrated with, and offset by, Social Security and Railroad Retire-

---

**4.** For plan years prior to December 31, 1988, the statute provided the following vesting alternatives: (1) full vesting of accrued benefits derived from employer contributions after 10 years of service; (2) graduated vesting in which the employee who had completed at least 5 years of service had a nonforfeitable right to a minimum percentage of accrued benefits derived from employer contributions; *or* (3) "Rule 45" which provided that "a participant who is not separated from the service, who has completed at least 5 years of service, and with respect to whom the sum of his age and years of service equals or exceeds 45, has a nonforfeitable right to a [statutorily designated] percentage of his accrued benefit derived from employer contributions ..." 29 U.S.C. § 1053(a)(2)(A), (B), (C).

ment benefits. 29 U.S.C. §§ 1054(b)(1)(B)(iv), (b)(1)(C), (b)(1)(G). Since ERISA's enactment, the list of permissible offsets has been expanded to include workmen's compensation awards, *Alessi*, 451 U.S. at 511–17, 101 S.Ct. at 1900–03, severance pay benefits, *Vintilla*, 606 F.Supp. at 642–44, and retirement benefits received under other employment contracts or pension plans provided by the same employer. *Holliday*, 732 F.2d at 550–52; *see also Quinn v. Burlington Northern Inc. Pension Plan*, 664 F.2d 675 (8th Cir.1981), *cert. denied*, 456 U.S. 928, 102 S.Ct. 1976, 72 L.Ed.2d 444 (1982).

Pritchard's attempt to distinguish *Alessi*, *Vintilla* and *Holliday* on their facts is unpersuasive. We see no difference between the setoffs approved either expressly by ERISA or in cases such as *Alessi*, *Vintilla* and *Holliday*, and the setoff complained of here. In permitting integration of Social Security and Railroad Retirement benefits, Congress intended "to promote a system of private pensions by giving employers avenues for cutting the cost of their pension obligations." *Alessi*, 451 U.S. at 517, 101 S.Ct. at 1903. This purpose is served by allowing the offset in the present case. We conclude, as did the district court, that Rainfair's integration of the two pension plans did not violate the non-forfeiture provision of 29 U.S.C. § 1053(a).

### (2) *Health Insurance Benefits*

Pritchard alleges in his amended complaint that "while employed by [Rainfair]" he was advised by "duly authorized agents" that he was eligible for and enrolled in a company pension plan which would provide him with post-retirement medical benefits at the time he reached age 65, and that Rainfair denied him those benefits in violation of 29 U.S.C. § 1140. In response to the summary judgment motion, however, Pritchard attests that:

> It was my understanding from conversations with President E.A. Hansen that post-employment health insurance coverage would be afforded me and certain other employees after reaching the age

of 65 as this was *in addition to the retirement plan....*

\* \* \* \* \* \*

> To my knowledge there were two employees who left the employment of the company either before me or approximately the same time who received post-employment health benefits paid by Rainfair after they reached age 65.

(Affidavit in Opposition to Supplemental Motion for Summary Judgment). To the extent Rainfair denies any such agreement, he contends that there exists a genuine issue of fact which precludes the entry of summary judgment.

The district court found Pritchard's claim to post-retirement medical benefits lacking in several respects, most notably the absence of any stated legal basis for the claim. Although Pritchard pled a § 1140 violation, he presented no facts in support of that claim. To the extent he modified his original claim in response to the summary judgment motion to allege a general § 1053(a) violation, the court held that ERISA's minimum participation and vesting requirements do not apply to welfare benefit plans. *Moore v. Metropolitan Life Insurance Co.*, 856 F.2d 488, 491 (2d Cir. 1988). At that point, the district court suggested that Pritchard's claim might have been based either on a violation of 29 U.S.C. § 1132(a)(1)(A) or, alternatively, on a breach of contract theory. It concluded, however, that even those routes would prove unavailing as Pritchard's "understanding" as to what benefits were due was not objectively reasonable, and granted the motion for summary judgment.

■ Pritchard does not dispute the fact that he has failed to state any viable legal basis for his claim to post-retirement medical benefits, and he makes no attempt to correct that oversight on appeal. The only challenge which he now raises is directed at the district court's "objectively [un]reasonable" finding. He contends that such credibility determinations were improper at the summary judgment stage, and should have been left for trial. Pritchard is presumably under the impression that we should also leave it to the jury to determine

what the legal basis of his claim should be. For obvious reasons, we decline the invitation.

Pritchard's emphasis on the existence of a "disputed fact" ignores the well-established principal that the fact in dispute must be material, or outcome-determinative *under applicable law. Wainwright Bank & Trust Co. v. Railroadmen's Federal Savings & Loan Ass'n of Indianapolis,* 806 F.2d 146, 149 (7th Cir.1986). The only claim pled in the amended complaint was a violation of 29 U.S.C. § 1140. Pritchard has failed to show how the mere fact that he may have been promised post-retirement medical benefits is outcome-determinative of a § 1140 claim. .

■ While a complaint may be amended to add a new legal theory under Fed. R.Civ.P. 15(a), Pritchard never sought such an amendment. His attempt to amend by briefs in opposition to summary judgment and on appeal is both untimely and improper. *See Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir.1989); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1107 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *Ackerman v. Schwartz,* 733 F.Supp. 1231, 1255 (N.D.Ind.1989). The defendant and the court should not be left to speculate as to what theory the plaintiff may be pursuing. Pritchard could have, and should have, amended his complaint to plead a § 1132 violation or a pendent state breach of contract claim prior to the entry of final judgment, if indeed that is what he intended. He did not. Neither the district court, nor this court, is required to address claims which were not properly before it.

■ Had Pritchard followed the proper procedure for amending his complaint to include a § 1132 claim, the evidence before us clearly demonstrates that he would not have prevailed. To succeed on such a claim, Pritchard must first show that he was a participant in a "welfare benefit plan" or "welfare plan" as those terms are defined at 29 U.S.C. § 1002(1). The district court correctly concludes that there was no such plan in effect during the time Pritchard was employed by Rainfair. Pritchard's

unilateral "understanding" of what benefits may have been available to him, and the mere fact that two other employees may have received post-retirement medical benefits do not establish a "welfare benefit plan" within the meaning of ERISA. *See Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1504 (9th Cir.1985); *Donovan v. Dillingham,* 688 F.2d 1367, 1372–73 (11th Cir. 1982) (*en banc*) (mere fact that employer ultimately decided to provide an employee welfare benefit does not constitute the establishment of a plan or program sufficient to invoke ERISA's coverage). Whether or not Pritchard may be entitled to contractual protection is a question of state law, better left to the state courts.

### B. *Attorneys' Fees*

As a prevailing party, Rainfair made a request for attorneys' fees under ERISA and, alternatively, under Fed.R.Civ.P. 11. The district court denied both requests.

■ When a defendant prevails in an action under ERISA, the standard for awarding attorneys' fees is the same as under the Equal Access to Justice Act. *Bittner v. Sadoff & Rudoy Industries,* 728 F.2d 820, 830 (7th Cir.1984). Attorneys' fees should be awarded:

"unless the court finds that the position of the [plaintiff] was substantially justified or that special circumstances make an award unjust." These words create a modest presumption ... in favor of awarding reasonable attorney's fees to the winning party, plaintiff or defendant, unless the loser's position, while rejected by the court, had a solid basis—more than merely not frivolous, but less than meritorious.

*Id.*

■ In denying relief under ERISA, the court found that Pritchard's position was "substantially justified." It did not reach the same conclusion with respect to Pritchard's claim to post-employment medical insurance, but rather found "special circumstances" which it believed made an award of attorneys' fees unjust. The court identified those circumstances as follows: (1) the

second claim did not significantly add to the time and effort needed to bring this case to a conclusion; (2) it would be hard to separate out time necessary to defend the second claim from time necessary to defend the first; and (3) "considering the economic situation of Mr. Pritchard and Rainfair, an award of fees to the company ... would be unjust."

██ On appeal Rainfair challenges only the district court's decision to deny attorneys' fees for time expended in addressing Pritchard's second claim for post-employment medical insurance benefits. Rainfair contends that the district court's denial of attorneys' fees with respect to that issue constituted an abuse of discretion. It argues that the "special circumstances" identified by the court either had no basis in the record or were directly contrary to the record. Rainfair points to the fact that it was required to bring a supplemental motion for summary judgment to address the medical insurance claim (as briefing on its original motion had already been completed); that its counsel had already detailed exactly which defense expenses related to which claim; and that there was no proof of the relative financial circumstances of Pritchard and Rainfair in the record. Rainfair concludes that even if it was not an abuse of discretion for the court to deny attorneys' fees under ERISA, it was definitely an abuse of the court's discretion to deny attorneys' fees under Rule 11 which mandates the imposition of sanctions if the court finds that the amended complaint was signed without a reasonable inquiry into the facts or law.

Had the decision been ours, we might have been inclined to agree with Rainfair that an award of fees was in order. The decision, however, is not ours, and we cannot say that it was an abuse of discretion for the district court to deny the defendant's request. ERISA does not mandate the imposition of an attorneys' fee award, and the district court sufficiently identified its reasons for denying that request. So too, we find no abuse in the district court's refusal to separate the claims in determining whether Rule 11 sanctions were war-

ranted. As we stated in *Melrose v. Shearson/American Express, Inc.*, 898 F.2d 1209 (7th Cir.1990), the focus of a Rule 11 inquiry is generally "on the motion or pleading as a whole, rather than its parts," and while we will not prohibit a district court from undertaking a point-by-point Rule 11 analysis, neither will we require it to do so. *Melrose*, 898 F.2d at 1217.

## III. CONCLUSION

For the foregoing reasons, we now AFFIRM the judgment of the district court granting Rainfair's motions for summary judgment and denying its motion for attorneys' fees.