Clarence WALKER, et al., Plaintiffs,

v.

Howard A. PETERS, et al., Defendants.

No. 93 C 5479.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 30, 1994.

Clarence Walker, et al., plaintiffs pro se.

Iain D. Johnston, Asst. Atty. Gen., Rockford, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Clarence Walker ("Walker") originally started this action as the first-named plaintiff in what for the most part has proved to be a frivolous lawsuit in the legal sense—a 42 U.S.C. § 1983 ("Section 1983") action complaining of the asserted unconstitutional treatment of several Stateville Correctional Center ("Stateville") inmates by reason of the filming at the institution of scenes for a motion picture titled "Natural Born Kill-

ers."[1] This Court's review of the legally frivolous aspects of this action then carved it down dramatically by the issuance of opinions and orders dismissing out all plaintiffs other than Walker and all defendants save four members of the Stateville staff (referred to here, for convenience, as "Stateville Defendants").[2] But Walker himself survived those dismissals because this Court found that he had asserted a claim for failure to treat serious medical needs that was facially sufficient under *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and its progeny.

Three recent developments have placed this action into a posture for final disposition. First, all of the remaining earlier-served members of the Stateville staff (Warden Salvador Godinez, Assistant Warden of Operations James Schomig and Assistant Warden of Programs Jerome Springborn ("Springborn")) have filed a motion for summary judgment under Rule 56 that, with the filing of Walker's cross-motion and of the Stateville personnel's response to that motion, has now become fully briefed. Second, Walker's July 25, 1994 filing of a motion for preliminary injunctive relief was denied in this Court's August 26 memorandum opinion and order. And third, late-served defendant Christine Blue ("Blue") has requested, and on August 26 was granted, leave to join in her codefendants' summary judgment motion (hence the enlargement of the term "Stateville Defendants" in this opinion to include Blue as well as the original three defendants who had been given that label). This opinion therefore turns to the cross-motions under Rule 56.

### Summary Judgment Standards

■ Because of the nature of the parties' submissions, a few words should be said at the outset about the ground rules governing this decision. Familiar Rule 56(c) principles teach that to be "entitled to a judgment as a matter of law," any moving party must establish the absence of any "genuine issue as to any material fact" (*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). In that respect a "genuine issue" requires that there be sufficient evidence for a jury to return a verdict in favor of the nonmovant (*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), while a "material fact" is one that "might affect the outcome of the suit under the governing law" (*id.* at 248, 106 S.Ct. at 2510; *Pritchard v. Rainfair, Inc.,* 945 F.2d 185, 191 (7th Cir.1991)). In applying those principles, this Court is not required to draw "every conceivable inference from the record—only those inferences that are reasonable" in favor of the nonmovant (*Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991)). Where as here cross-motions are involved, it is thus necessary to adopt a different perspective on each of those motions.

■ But the need to draw such inferences does not require this Court to don blinders. Because summary judgment motions are tested by the same standard as motions for judgment as a matter of law under Rule 50(a) (*Anderson,* 477 U.S. at 250–52, 106 S.Ct. at 2511–12), the process necessarily implies some weighing of opposing evidence—as *Anderson, id.* at 251–52, 106 S.Ct. at 2512 has put it:

> In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

■ That just-described inquiry does not require the court to credit testimony that, because it has been irrefutably contradicted by documentary evidence, is inherently incredible (*Respect Inc. v. Committee on the Status of Women,* 781 F.Supp. 1358, 1367

---

1. By coincidence this past weekend marked the opening of that movie in the Chicago area, accompanied by extraordinarily favorable reviews—almost without exception according it a four-star rating. In sharp contrast, as this opinion will reflect, this reviewer ultimately gives Walker's current lawsuit zero stars.

2. Motion picture director Oliver Stone ("Stone") had been the only non-governmental-employee defendant. This Court's brief May 3, 1994 memorandum opinion and order, 1994 WL 171444 granted Stone's motion for dismissal from the action under Fed.R.Civ.P. ("Rule") 12(b)(6).

(N.D.Ill.1992) and cases cited there). No material that has been submitted in support of a Rule 56 motion need be considered if it is inadmissible into evidence (Rule 56(e)), and a specialized application of that principle also precludes a party opposing summary judgment from resting on his, her or its pleading allegations in the face of admissible evidence to the contrary (*id.*).

In this instance the parties have aided this Court by conforming to the requirements of this District Court's General Rule ("GR") 12, intended to facilitate the resolution of Rule 56 motions.[3] GR 12(m) requires every summary judgment movant to submit a statement of assertedly uncontested facts, with citations to the record in support of each. In turn GR 12(n) requires each nonmovant to respond to the GR 12(m) statement point by point, with citations to the record in support of (1) any claimed contest of the movant's version of the facts and (2) any additional facts that the nonmovant chooses to assert. For purposes of this opinion the only record references that are needed are to exhibits forming part of Stateville Defendants' GR 12(n) response, cited here as "D. 12(n) Ex.—."

### Facts

■ In light of the just-discussed principles, the factual discussion here can be brief indeed. When Stateville Warden Godinez agreed to make the Stateville facilities available to Stone to shoot some of the scenes for "Natural Born Killers," a bulletin was issued to all members of the staff and all inmates (D. 12(n) Ex. 1) explaining what portions of the facility would be closed and reopened during what periods of time. Despite Walker's unsupported assertions to the contrary, the medical treatment for his numerous physical ailments was *never* cancelled or interrupted.[4] That has been established by thick medical records (as well as by affida-

vits) supplied to this Court, so that Walker's contrary (and wholly unsubstantiated) protestations need not and will not be credited under the already-stated principles.

Nor was Walker denied pain medication during the June 29 to August 10, 1993 period, as he also asserts without evidentiary support. Exactly the opposite is true—the contemporaneously-prepared medical records conclusively show otherwise. In fact, D. 12(n) Ex. 5 (Medical Progress Notes for July 14 and 15, 1993) expressly quote Walker as saying on July 15:

> I don't like all the extra medicine [Doctor] Brewer has me on.

In summary, what the admissible evidence in the record shows overwhelmingly is a prisoner who does indeed suffer from a number of medical needs of a serious nature (at one point Walker was operated on to remove one of his kidneys), but *all* of which have been the subject of constant medical attention. As this Court's August 26 opinion denying Walker preliminary injunctive relief stated, the Medical Progress Notes addressing Walker's treatment alone and covering the short period beginning May 31 of this year comprise fully 36 pages, and they are supplemented by a battery of other medical records. Indeed, Walker's perception of that situation as somehow calling for the extraordinary remedy of preliminary injunctive relief on claimed grounds of "deliberate indifference" provides a good deal of total insight into his skewed notion of what the Constitution requires.

### Application of Summary Judgment Principles

As with the just-completed *Facts* section, this opinion can be equally brief in dispatching Walker's motion in legal terms. As indicated earlier, *Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292 held that Section 1983 liability would be imposed on prison officials

---

3. Because Walker is a nonlawyer, when Stateville Defendants filed their Rule 56 motion this Court followed its invariable practice of sending Walker a letter (Ex. 1 to this opinion) explaining the summary judgment concept and its possible consequences and enclosing copies of Rule 56(e) and of GR 12(m) and (n).

4. It is true that during the movie's filming there were parts of two different days during which physical access to Stateville's Health Care Unit was partially restricted, but even in that situation Stateville inmates were still treated in the Unit (Springborn Aff. ¶ 10, D. 12(n) Ex. 3). Walker himself suffered no deprivation of care whatever by reason of the short-term partial restriction.

who displayed "deliberate indifference" to a prisoner's serious medical needs. Because the "deliberate indifference" phraseology has also been applied in other contexts in the prison environment, it has taken more time and further case law development—including two Supreme Court opinions in the last three terms, *Hudson v. McMillian,* 503 U.S. 1, ——, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992) and *Farmer v. Brennan,* —— U.S. ——, —— – ——, 114 S.Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994)—to refine its content.

■ But what remains crystal clear is that mere disagreements between doctor and patient about the course of treatment do not reflect "deliberate indifference" on the part of the former, although of course if the patient is right he or she might have a common law (not a constitutional) claim for medical malpractice (*Estelle,* 429 U.S. at 105–07, 97 S.Ct. at 291–93; *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir.1980)). And surely the record here provides as plain an example of medical attentiveness (180° removed from "deliberate indifference") to Walker's serious medical needs as could be imagined. There is no way in which the situation before this Court could be characterized as violative of the Supreme Court's last word on "deliberate indifference" in *Farmer, id.* —— U.S. at ——, 114 S.Ct. at 1979:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference. We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

*Conclusion*

There is no genuine issue of material fact, and Stateville Defendants are entitled to a judgment as a matter of law. Their motion for summary judgment is granted, while Walker's cross-motion is denied. And because Stateville Defendants are the last remaining parties to this action, it is dismissed with prejudice.

EXHIBIT 1

June 23, 1994

Mr. Clarence Walker

C–01401

Stateville Correctional Center

P.O. Box 112

Joliet IL 60434

Re: Walker v. Peters, No. 93 C 5479

Dear Mr. Walker:

As you know, the lawsuit that you have brought under the above caption and case number is now pending before this Court. At this point only three defendants (Salvador Godinez, James Shomig and Jerome Springborn, referred to for convenience in this letter as "Stateville Defendants") have been served with process and are still in the case.[1] As you know Stateville Defendants have just filed, in accordance with Rule 56 of the Federal Rules of Civil Procedure, their motion for summary judgment together with supporting papers.

At yesterday morning's motion call counsel for Stateville Defendants also advised that you had raised a question with him as to whether some of the medical records submitted in support of the motion had been forged, and that counsel planned to file a supplemental affidavit shortly to address that question. This morning's mail brought a motion from you asking that Stateville Defendants be ordered to submit "correct hospital records." Because at this point I have no way of knowing whether the records already furnished

---

**1.** My understanding is that Christine Blue has not been served with process. In the absence of any adequate explanation for such non-service, this action will be dismissed as to Ms. Blue on the same date that I rule upon Stateville Defendants' current motion.

were or were not the actual records, I have instead ordered that Stateville Defendants indeed file the supplemental affidavit to which I have referred. Of course a copy of that affidavit will also be transmitted to you.

As contemplated by Rule 56, I ordered yesterday that any responsive materials that you plan to submit must be filed on or before August 5, 1994.[2] When I have reached my decision on the government's motion, my minute clerk will mail copies of the written order to both you and Stateville Defendants' counsel.

Because of the importance and potentially final nature of a summary judgment motion, this letter is intended to inform you of the consequences if you were to ignore this Court's order or if any materials that you do submit are legally insufficient. By their motion for summary judgment, Stateville Defendants are asking to have the suit decided in their favor without a full-scale trial, based on the evidence presented in the documents attached to their motion. Unless you answer the motion with your own affidavits or properly supported documentary evidence or both, only Stateville Defendants' evidence will be before me. Thus your failure to respond in that way would be the equivalent of your failing to present any evidence in your favor at a trial.

Under Rule 56(e) of the Federal Rules of Civil Procedure, a copy of which is enclosed, you may not simply rest on any unsworn documents that you may previously have filed in court. Such documents are not a proper response to a motion for summary judgment. Under the same Rule, if you do not submit affidavits or documentary evidence now, I may accept the facts that have been declared in Stateville Defendants' submission as true and (if those facts justify a decision in Stateville Defendants' favor) I may enter summary judgment against you. In that event you will have lost your case, and judgment will be entered in Stateville Defendants' favor.

That same result may follow if any matters that you do submit are not legally sufficient to establish your claim against Stateville Defendants. Of course I am is not in a position to indicate what is necessary for that purpose. Instead I will simply evaluate any submission that you choose to file on or before the August 5 deadline.

To assist each judge in determining whether any factual disputes exist and, if they do, whether such disputes are legally significant, our District Court has adopted its own General Rules 12(m) and 12(n) (a photocopy of which rules is also enclosed) to supplement Rule 56. As you have seen, Stateville Defendants have complied with General Rule 12(m) by providing a Statement of Facts. As part of any submission that you choose to file, you will be expected to comply with General Rule 12(n) (as you will note, that rule specifically provides that unless your own statement in response shows that any part or parts of Stateville Defendants' General Rule 12(m) statement is or are disputed, the statement [or the parts not identified by you as in dispute] will be considered as having been admitted).

Sincerely,

Milton I. Shadur

MIS:wb
enclosure

cc: Iain D. Johnston, Esq.
    Assistant Attorney General

2. That date was selected to allow substantially more time than is usually provided for summary judgment responses, both (1) because Stateville Defendants' plan to file a supplemental affidavit means that you do not now have all of the documents to which you will have to respond and (2) because I recognize the extra delays that are caused by your being in custody.